IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK13-41856 |
| | ) | |
| ANTOINETTE MARIE HARRIS, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| ANTOINETTE MARIE HARRIS, | ) | ADV. NO. A14-4001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WINDHAM PROFESSIONALS, | ) | |
| a New Hampshire company; | ) | |
| NELNET, INC., formerly UNIPAC, | ) | |
| a Nebraska company; | ) | |
| ABC CORPORATION 1-5; and | ) | |
| XYZ PARTNERSHIP 1-5, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ECMC, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

## ORDER

Trial was held in Lincoln, Nebraska, on December 2, 2014, on Plaintiff's complaint. Antoinette Marie Harris appeared pro se, Joel A. Bacon appeared for ECMC, and Shawn P. Dontigney appeared for Nelnet, Inc., formerly UNIPAC ("Nelnet"). The parties were given the opportunity to file closing briefs, and the matter is now ready for decision. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

For the reasons set forth below, I find that Plaintiff has not met her burden of proof of undue hardship and that judgment should be entered in favor of Defendants and against Plaintiff. The student loan obligations at issue in this adversary proceeding are excepted from discharge.

## *FINDINGS OF FACT*

The following facts are either undisputed or were established by the evidence admitted at trial.

1.	In October 1996, Ms. Harris obtained a student loan in the amount of $10,804.20 to complete her Bachelor degree from Bellevue University. The interest rate was 8% per annum.

2.	Ms. Harris earned a Bachelor of Science degree in business administration from Bellevue University in 1997, and has been consistently employed. In 2004, the first year for which wage information appears in the record, Ms. Harris earned $37,920.00. By 2009, when Ms. Harris was employed at the University of Nebraska Medical Center ("UNMC") as a marketing specialist, she was earning more than $55,000.00. However, in 2010, Ms. Harris lost her position at UNMC due to a reduction in the workforce and was briefly unemployed. Notwithstanding, she earned more than $50,000.00 in 2010. At the start of 2011, Ms. Harris accepted a temporary position with UNMC, and later that year accepted her current position as a residency program coordinator for the plastic surgery department at UNMC.

3.	Between the date of the loan and September 2006, Ms. Harris made a total of three payments, totaling $397.81. In lieu of payments during those 10 years, Ms. Harris requested and received a series of three deferments and eleven forbearances of her repayment obligations. Federal regulations and the forbearance and deferment agreements required that the accrued interest be capitalized at the completion of each deferment or forbearance. As a result, the outstanding balance of the loan grew to almost $23,000.00 by the fall of 2006.

4.	Some time in 2007, Ms. Harris began making payments of $160.00 per month pursuant to a graduated repayment plan. Such a plan offers low initial payments that significantly increase over time. Over the course of the next three years, Ms. Harris paid approximately $6,000.00. However, many of those payments (approximately 70%) were late, meaning a portion of her payments were applied toward late fees. The late payments, combined with the graduated repayment plan, resulted in little or no application of payments toward principal.

5.	Beginning in December 2009, payments from Ms. Harris became irregular and she missed several payments. In August 2010, due to the default, her student loan lender made a claim with the guaranty agency for the loan, the National Student Loan Program ("NSLP"). NSLP paid the claim at the end of October 2010. As a result of the default and the claim on the guaranty agency, the outstanding interest was again capitalized and collection costs were also added to the amount owed pursuant to federal regulations. From January 2012 to February 2013, NSLP administratively garnished approximately $386.00 per month from Ms. Harris' paychecks. The garnishment was discontinued when, in March 2013, Ms. Harris commenced making voluntary payments of $250.00 per month. In total, NSLP received $5,619.66 from wage garnishments and $2,000.00 in voluntary payments. Of that amount, it applied $511.96 to principal, $5,918.11 to interest, and $1,189.59 to collection costs.

6.  Ms. Harris filed a voluntary Chapter 7 petition on October 4, 2013, in the District of Nebraska, Case No. BK13-41856, and received her Chapter 7 discharge on January 28, 2014. On January 10, 2014, Ms. Harris filed this adversary proceeding seeking to discharge her student loan debt as an undue hardship pursuant to 11 U.S.C. § 523(a)(8).

7.  After this adversary proceeding was filed in January 2014, Ms. Harris' loan was transferred to Defendant Educational Credit Management Corporation ("ECMC"). ECMC provides specialized guaranty services for the Department of Education and other federal student loan program guaranty agencies and, by agreement with NSLP, takes assignment of student loans for the purpose of defense when an adversary proceeding is filed.

8.  At the time of the transfer to ECMC, the outstanding principal balance of the loan was $24,413.93, plus unpaid interest of $550.78. ECMC then assessed and recalculated collection costs and added $6,085.52 to the balance of the loan. At the time of trial, the total amount owed, including principal, outstanding interest, and fees was $32,643.73.

9.  At the present time, Ms. Harris' current gross earnings are $1,474.70, paid biweekly. Taking into account 26 pay periods per year, this equates to gross income of $38,342.20 per year and $3,195.18 per month.

10. Ms. Harris contends that her net monthly income (gross income minus payroll and other deductions) is $1,940.15. However, as ECMC points out, it appears that Ms. Harris obtained that figure by multiplying the net amount she receives in most pay periods, $970.08, by 2. But, as an employee paid biweekly, she actually has 26 pay periods per year, not 24. Therefore, in order to calculate Ms. Harris' average monthly net income, the amount she receives per pay period should be multiplied by 26 and then divided by 12 months. That calculation results in a net monthly income of $2,101.84.

11. As of November 13, 2014, a total of $2,150.53 had been deducted from Ms. Harris' gross income for her federal tax withholding. Presently, $106.96 is being withheld from each paycheck for federal taxes, which would increase her total federal tax withholding for 2014 to $2,471.41. Ms. Harris had a total federal tax obligation for 2013, exclusive of a $990.00 earned income tax credit she appears to have received, of $1,309.00.

## *DISCUSSION*

Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for student loans, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" In contrast to many other types of debts, § 523(a)(8)'s exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004).

A debtor's obligation on a student loan remains unless there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

A debtor seeking a determination that her educational loan debt is dischargeable under § 523(a)(8) bears the burden of proving, by a preponderance of the evidence, that repayment of the loan would impose an undue hardship. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005). "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used.

> We apply a totality-of-the-circumstances test in determining undue hardship under § 523(a)(8). Reviewing courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and "any other relevant facts and circumstances." The debtor has the burden of proving undue hardship by a preponderance of the evidence. The burden is rigorous. "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."

*Jesperson*, 571 F.3d at 779 (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)) (footnote omitted). Each category will be examined in turn.

*Past, Present, and Reasonably Reliable Future Financial Resources*.

As indicated, Ms. Harris has been steadily employed since graduating college and has made as much as $55,000.00 per year. However, that was before 2010 when her job was eliminated. She now makes a little more than $38,000.00 per year and expects to receive relatively small annual cost of living increases in future years.

Ms. Harris has appeared pro se in this proceeding and has proven herself to be intelligent, educated, and well-spoken – more so than any pro se party who has appeared in front of me. I have been impressed by her legal, verbal, and writing skills and have no doubt that she will continue to be employed full-time for the foreseeable future. Based on her employment history, it appears that her present salary of approximately $38,000.00, plus annual cost of living increases, is probably on the low end of what she will reasonably expect to earn in the future.

*Reasonable and Necessary Living Expenses*.

Ms. Harris is single with one 19-year old child in college whom she considers a dependent. For the past 18 months she has lived with her boyfriend in his home. They do not commingle their finances and Ms. Harris does not presently pay rent. However, she does share in some grocery

expenses and pays him $200.00 per month for loans related to car repairs. Ms. Harris testified that the $200.00 per month payment will continue as a form of rent once the car repair loans are paid.

At trial, Ms. Harris submitted Filing No. 117, which is a statement of her monthly expenses totaling $2,286.00. ECMC has challenged the reasonableness and necessity of some of the listed expenses which will be discussed below.

ECMC challenges the expenses related to Ms. Harris' automobile. She drives a 2003 Chevy Trailblazer valued in her schedules at $2,683.00. Her expenses related to that automobile include the $200.00 per month she pays to her boyfriend for car repairs and a credit union loan for other auto repairs payable at the rate of $136.00 per month. The credit union loan will be paid off in April of 2015. She additionally factors in $250.00 for monthly auto maintenance and $350.00 for fuel. Thus, ECMC argues that Ms. Harris is spending a total of $936.00 per month on her 12-year-old vehicle, which is unreasonable. ECMC believes Ms. Harris should be able to find a less expensive newer vehicle that gets better gas mileage.

I disagree a bit with ECMC's calculations. As Ms. Harris testified, the $200.00 paid to her boyfriend should not be considered as it will continue as a form of rent payment once the repair loan is paid off. Certainly, that amount for rent is not unreasonable. Also, the $136.00 paid to the credit union will be done in a few months, so it also should not be considered a long-term monthly expense. That leaves about $600.00 per month paid for auto maintenance and fuel. If her maintenance expenses really average out to $250.00 per month ($3,000.00 per year), Ms. Harris certainly should consider whether a newer, more fuel-efficient vehicle would make sense. In any event, for purposes of this order, I find that her future expenses for her automobile are overstated by at least $136.00 per month.

ECMC also challenges the $450.00 per month that Ms Harris lists for groceries, arguing that it exceeds the USDA food plan guidelines for a 50-year-old single woman. Ms. Harris explains that the groceries are part of her contribution to the household, not just for herself. ECMC finds fault with this contribution toward household expenses, but I do not. Ms. Harris pays very little as rent for her living arrangement – either zero or $200.00 depending on how the car repair loan is classified. Further, the $450.00 grocery figure is quite modest considering Ms. Harris lists only $20.00 per month for the occasional "meals out."

ECMC challenges Ms. Harris' monthly income tax withholding. As indicated previously, her 2013 tax obligation, exclusive of earned income tax credit, was $1,309.00, while her 2014 withholding was almost $2,500.00. Thus, on its face, it would appear that Ms. Harris is over-withholding by approximately $100.00 per month. There may be a good explanation for her extra withholding in 2014, but no such explanation was provided. Therefore, I must agree with ECMC that her tax obligations are overstated by $100.00 per month.

Next, ECMC challenges the monthly contributions Ms. Harris makes for her 19-year-old daughter in college. According to Ms. Harris' statement of expenses, she contributes an average of $225.00 per month to her daughter ($100.00 for car expenses and $125.00 for other support). ECMC

believes this is unreasonable because there is no legal obligation to support a 19-year-old. I absolutely disagree and find no fault whatsoever with Ms. Harris contributing $225.00 per month for the benefit of her college-aged daughter. Under the circumstances of this case, such an expense is both reasonable and necessary. However, I do agree with ECMC that such an expense is temporary and there will come a time within the next few years – such as graduation or full-time employment – when such an expense is no longer reasonable or necessary.

As ECMC points out, there are other expenses listed by Ms. Harris that are also temporary. She lists $50.00 each for overdraft protection loans, a retirement account loan, and a federal tax repayment plan, and $100.00 per month for credit card payments. Those amounts total $250.00. That amount, plus the $225.00 support for her daughter and the $136.00 paid for the auto repair loan are all temporary, freeing up $600.00 per month in the foreseeable future.

*Other Relevant Facts and Circumstances.*

According to ECMC, Ms. Harris would be eligible for the Income Based Repayment ("IBR") Plan. *See* 34 C.F.R. § 682.215. Under the IBR, a debtor's payment is calculated using the borrower's adjusted gross income and family size relative to the Federal Poverty Guidelines. The required annual loan payment under the IBR is capped at 15% of earnings above 150% of the applicable poverty level. 34 C.F.R. § 682.215(b). ECMC represents that, using Ms. Harris' 2013 income tax return and claiming her daughter as a dependent, the monthly payment under the IBR would be $76.58. If Ms. Harris is unable to use her daughter as a dependent, her monthly payment would be $152.70. If a borrower makes the required payments for 25 years, the remaining balance is discharged at that time. 34 C.F.R. § 682.215(f).

Ms. Harris does not dispute these assertions by ECMC. Instead, she argues that requiring her to participate in the IBR would be a hardship because she is presently 50 years old and would not be discharged until she made payments for 25 years and was 75 years old. Further, Ms. Harris points out that the monthly payments would likely not even cover accruing interest so the balance due will continue to increase notwithstanding the monthly payments, and at the end of 25 years she would be subject to a large income tax obligation for debt forgiveness.

In response, ECMC notes that Ms. Harris is currently a public employee and, as such, is also entitled to the benefits of the Public Service Loan Forgiveness Program ("PSLFP"). The PSLFP is part of the William D. Ford Direct Loan Program ("Direct Loan Program") administered by the Department of Education. Borrowers like Ms. Harris can consolidate all of their federal loans into the Direct Loan Program and take advantage of the PSLFP. According to ECMC, under the PSLFP, after making 120 qualifying payments while employed full time by a government or nonprofit employer, the borrower's outstanding balance will be forgiven. 34 C.F.R. § 685.219(b). A borrower can make qualifying payments under an IBR plan (as outlined above) towards satisfaction of the 10 years of payments required under the PSLFP. 34 C.F.R. § 685.219(c)(iv). Therefore, instead of facing 25 years until loan forgiveness, Ms. Harris may be able to complete her payments within 10 years.

-6-

The potential tax obligation for debt forgiveness is a concern for all borrowers participating in an IBR plan and is a concern for Ms. Harris. However, ECMC points out that forgiveness of debt for student loans that qualify under the PSLFP is a non-taxable event according to 26 U.S.C. § 108(f) of the Internal Revenue Code. Ms. Harris does not appear to dispute this assertion.

### *CONCLUSION*

Ms. Harris is an intelligent, articulate, and hard-working individual who has been employed full time since graduating college. It is very likely that she will continue to be employed at or above her current salary for many years to come. As discussed above, her monthly net income is actually somewhat higher than she represents due to the biweekly nature of her compensation. Further, it appears that she is over-withholding for federal income taxes, perhaps as much as $100.00 per month. In addition, many of her monthly expenses are relatively short-term obligations, ranging from a few more months to a few years. Accordingly, as more fully described above, her net monthly income after expenses is more than sufficient to cover an IBR payment, whether it is $76.58 or $154.70 or more. By participating in the IBR and the PSLFP, she could discharge her student loan debt in as little as 10 years by making payments calculated according to her income, all without adverse tax consequences. In fact, had she done so prior to commencement of this adversary proceeding, she would already be more than a year into the 10-year repayment term.

For the foregoing reasons, I find that Ms. Harris has not met her burden of proof for undue hardship under 11 U.S.C. § 523(a)(8), and her request for discharge of her student loan indebtedness is denied and the complaint dismissed as to all Defendants. Separate judgment to be entered.

DATED:  January 8, 2015.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
 *Antoinette M. Harris
 Joel A. Bacon
 Brittney J. Krause
 Shawn P. Dontigney

Movant (*) is responsible for giving notice to other parties if required by rule or statute.